## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

ELDA MENDOZA,

       Plaintiff,

    vs.                                   2:19-cv-01171-KWR-GJF

FRANCISCO JAVIER AMADOR,

       Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff's Motion for Default Judgment Against Defendant Francisco Javier Amador, filed April 10, 2020 **(Doc. 10),** and Motion for court to Direct Clerk to Enter Order of Default, filed April 13, 2020 **(Doc. 11)**.  That day, the clerk entered an entry of default.  Having reviewed the pleadings and the applicable law, the Court finds that Plaintiff's motion for default judgment is well taken in part and, therefore, is granted in part. Judgment shall be entered against Defendant in favor of Plaintiff for a sum certain.

### BACKGROUND

This case involves Defendant's appropriation of certain settlement money from a state court case.  Plaintiff's son was killed in a motor vehicle accident.  A wrongful death suit was filed in state court in New Mexico against several defendants on behalf of Ms. Mendoza and other plaintiffs.  Plaintiff lives in Mexico and her uncle, the Defendant, acted as power of attorney and accepted any money to which she was entitled.  Plaintiff agreed to pay to him fifty percent of any money paid for her benefit.  Several defendants in the underlying wrongful death action settled with Plaintiff.  One of the settlement agreements was for the sum of $214,126.28, which was wire

transferred from plaintiff's wrongful death counsel to Defendant.  Defendant did give Plaintiff her settlement money.

The complaint sets out four counts:

Count I:      breach of contract for $214, 126.28;

Count II: breach of fiduciary duty, providing Plaintiff a remedy of punitive damages and attorney fees;

Count III: Violation of the Unfair Practices Act, seeking costs, attorney fees, and treble damages.

Count IV: Fraud, seeking compensatory and punitive damages.

On December 28, 2019, service of process was effectuated on Defendant by leaving a copy of the summons and complaint at his usual place of abode with his adult son.  Fed. R. Civ. P. 4(e). The summons was returned executed.  Defendant had 21 days to file an answer but failed to do so.

Upon motion by the Plaintiff, the clerk entered an entry of default on April 13, 2020.

The record reflects that Defendant has defaulted and failed to answer the complaint despite receiving service of process.   Defendant failed to file an answer, failed to respond to the motion for default or order for supplemental briefing on damages, and has never appeared or filed any pleading in this case.

In the motion for default judgment, Plaintiff requested a hearing on damages.  Plaintiff requested compensatory damages, punitive damages, attorney fees, costs, treble damages, pre-judgment and post-judgment interest.  The Court ordered supplemental briefing on damages and directed Plaintiff to provide all evidence she would present at a hearing, including exhibits and affidavit testimony.   The Court also ordered Plaintiff to serve these documents on Defendant to

give him an opportunity to contest damages.  Defendant had fourteen days to respond and failed to do so.

## DISCUSSION

### I.    <u>Liability</u>.

Plaintiff seeks default judgment on liability for the four counts above.  Rule 55 mandates a two-step process for a default judgment. First, a party must obtain a Clerk's entry of default. Second, the party must request a default judgment.  *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970) (citing Fed. R. Civ. P. 55(a) & (b)).  Once a defendant is found to be in default, a court must "t[ake] as true all factual allegations in the complaint, except those pertaining to the amount of damages." *Archer v. Eiland*, 64 F. App'x 676, 679 (10th Cir. 2003).  However, even after entry of default, the Court must decide "whether the unchallenged facts create a legitimate basis for the entry of a judgment." *See Greenwich Ins. Co. v. Daniel Law Firm,* No. 07–cv–2445–LTB–MJW, 2008 WL 793606, at *1 (D. Colo. Mar. 22, 2008) (citations omitted). "[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Id.* at *2 (citation omitted), *quoted in Villanueva v. Account Discovery Sys., LLC*, 77 F. Supp. 3d 1058, 1066 (D. Colo. 2015)

The Court has diversity jurisdiction over this case.  Plaintiff is a citizen of Mexico, and Defendant is a citizen of New Mexico.  Defendant's place of residence is in New Mexico.

Defendant was properly served under Fed. R. Civ. P. 4(e)(2) ("an individual may be served in a judicial district of the United States by…leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there").   Here, on December 28, 2019, Plaintiff left a copy of both the summons and

complaint at Defendant's usual place of abode with his adult son. **Doc. 10 at 5-6.** Plaintiff proved proof of service by appropriate affidavit. Fed. R. Civ. P. 4(l).

After Defendant was served, he failed to appear in this case or answer the complaint. Plaintiff requested that the Clerk of Court enter default against Defendant on April 13, 2020 (**Doc. 11**). The Clerk's Entry of default was entered that same day (**Doc. 12**). Defendant allegedly resides in New Mexico and the events occurred in New Mexico.

Moreover, the Court concludes that the allegations in the complaint, taken as true, provide a sufficient basis for entry of default judgment for the breach of contract and fraud claims. Therefore, Plaintiff is entitled to default judgment on liability.

However, the allegations in the complaint do not show how Defendant is liable for a New Mexico Unfair Practices Act claim. The UPA declares that "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful." NMSA § 57-12-3. The UPA defines an "unfair or deceptive trade practice" as "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person *in the regular course of the person's trade or commerce*, that may, tends to or does deceive or mislead any person ...." *Gandydancer, LLC v. Rock House CGM, LLC*, 2019-NMSC-021, ¶ 11, 453 P.3d 434, 438 (emphasis added). In order to state a claim under the UPA, a plaintiff must allege that (1) the defendant made some kind of "representation" that "was false or misleading"; (2) the representation "was knowingly made in connection with the sale ... of goods or services in the regular course of the defendant's business"; and (3) "the representation was of the type that may, tends to, or does deceive or mislead any person." *Vigil*, –

4

— P.3d at ——, 2019 WL 6768676, at * 8, *quoted in New Mexico ex rel. Balderas v. Tiny Lab Prods.*, No. 18-854 MV/JFR, 2020 WL 2065275, at *17 (D.N.M. Apr. 29, 2020).

Plaintiff does not allege that the fraudulent acts were performed in "regular course of [his] trade or commerce." NMSA § 57-12-2. Rather, here it appears that Defendant acted with power of attorney for a family member. Nothing in the complaint alleges that Defendant acted in the regular course of his trade or commerce. Therefore, the Court declines to grant default judgment on the UPA claim and dismisses the claim. Similarly, Plaintiff has not shown how she is entitled to default judgment on a breach of fiduciary duty claim. The Court dismisses that claim as well.

Defendant has given no indication that he intends to appear or defend this case. Therefore, default judgment is appropriate.

## II.   <u>Plaintiff is Entitled to Damages.</u>

Plaintiff seeks compensatory damages for the sum-certain amount taken from her, along with punitive damages, treble damages, costs, attorney fees, and pre-judgment and post-judgment interest.

### A.   Relevant Default Judgment Damages law.

Under Fed.R.Civ.P. 55(b)(1), judgment can be entered for a "sum certain" or a "sum that can be made certain by computation" where a defendant has been defaulted for a failure to appear. *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 20 (1st Cir. 2003). To be a "sum certain" there must be no doubt as to the amount that must be awarded. *Franchise Holding II, LLC. v. Huntington Rests. Group, Inc.,* 375 F.3d 922, 928–29 (9th Cir.2004). Moreover, "a court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation." *Hunt v. Inter–Globe Energy, Inc.,* 770 F.2d 145, 148 (10th Cir.1985). A court is not required to accept the plaintiff's legal conclusions or factual allegations

when assessing damages and must ensure that there is a legal basis for the damages specified in the default judgment. *Klapprott v. United States*, 335 U.S. 601, 611-12 (1949).

"In ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for default judgment." *Seme v. E & H Prof'l Sec. Co., Inc.*, 2010 WL 1553786, at *11 (D.Colo. Mar. 19, 2010) (citing *Fanning v. Permanent Solution Indus., Inc.*, 257 F.R.D. 4, 7 (D.D.C.2009), *quoted in Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1277 (D. Kan. 2016). "The calculation of damages requires the Court to look beyond the averments of the complaint. The Court is required to examine the sufficiency of all evidence with respect to damages, and, when evidence is deemed insufficient, to ascertain the appropriate level of damages through its own inquiry.*" Begay v. Rangel*, No. CV 05-0494 MCA/LCS, 2006 WL 8444385, at *2 (D.N.M. Mar. 10, 2006), *quoting* Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132(HB) et al., 2004 WL 1488110, at *2 (S.D.N.Y. June 30, 2004) (citations omitted).

**B.      Compensatory Damages.**

Here, the amount of damages is a sum certain and readily capable of mathematical calculation.  The amount has been proven by Plaintiff in the affidavits and exhibits attached to her supplemental brief.  **Doc. 18**.  The Court ordered supplemental briefing and directed Plaintiff to produce any evidence establishing her entitlement to the requested damages.  The Court also directed her to submit an affidavit showing her entitlement to the requested damages, along with any evidence or exhibits she would submit at an evidentiary hearing.   Plaintiff served the supplemental brief and exhibits on Defendant.  Plaintiff filed an affidavit of service.  **Doc. 19.**  The Court gave Defendant fourteen days to respond of service of the supplemental brief, and he failed

to do so.  Therefore, based on Plaintiff's extensive evidence, affidavits, and exhibits, the Court finds that the entry of damages is appropriate.

Defendant's affidavit and evidence shows that the requested damages are readily calculable.  Defendant appropriated a sum certain – a wire transfer for a certain settlement amount. The rest of the requested damages (punitive damages) are readily calculable based on the evidence presented by the Defendant.  Because Plaintiff has produced all evidence she would present at a hearing, including exhibits and affidavits in lieu of testimony, and Defendant received notice including the supplemental brief and exhibits and had an opportunity to object, the Court finds that a hearing is unnecessary.

In the motion, Plaintiff requested compensatory damages for sums certain of $214, 126.28 and $4,000.00.  Plaintiff received settlements of $214, 126.28 in the wrongful death suit.  Plaintiff also received other settlements and Defendant failed to give Plaintiff $4,000 to which she was entitled.  Plaintiff presented evidence showing that these amounts were wire transferred by her wrongful death case counsel to Defendant and that he received these amounts.  For example, Defendant Amador signed settlement disbursement letters as to each named defendant, acknowledging the amount each defendant would pay, and approving settlement on behalf of Ms. Mendoza.  **Doc. 18-4 at 2.**  Defendant received a certified letter notifying him again that Plaintiff's settlement money was disbursed to him, he had a duty to disburse the money to Plaintiff, and that bank records reflected he had received the money.  **Doc. 18-5.**

Defendant Amador failed to tell Plaintiff about the settlement or wire transfer or give her the proceeds.  Plaintiff has established, through extensive exhibits and affidavits, that Defendant received this money on Plaintiff's behalf and did not forward the proceeds to Plaintiff.  **Doc. 18, Ex. 1-13.**  Therefore, Plaintiff is entitled to compensatory damages in the amount of $218,126.28,

which is the amount she was entitled to in the settlement agreements.  To the extent Defendant Amador may argue that the had a contract with Plaintiff for fifty percent of that amount, he has not appeared to argue that point or prove that contractual right.

### C.    Attorney Fees.

 Plaintiff also requests attorney fees.  New Mexico and the federal courts adhere to the "American rule that, absent statutory or other authority, litigants are responsible for their own attorney's fees. The American rule recognizes the authority of statute, court rule, or contractual agreement. *New Mexico Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 9, 127 N.M. 654, 657, 986 P.2d 450, 453 (quotation marks and citations omitted).  Plaintiff has not shown in her motion that she is entitled to attorney fees on the breach of contract and fiduciary duty claims, fraud claims.  Therefore, the Court declines to award attorney fees.

### D.    Punitive Damages.

Punitive damages are available under either the fraud claim or the breach of contract claim if Plaintiff shows proof of "willful, wanton, malicious, reckless, oppressive, fraudulent or in bad faith" conduct. *Akins v. United Steel Workers of Am.,* 148 N.M. 442, 450 237 P.3d 744, 752 (2010). *Obenauf v. Frontier Fin. Grp., Inc.*, 785 F. Supp. 2d 1188, 1225 (D.N.M. 2011).  "[T]he amount of an award of punitive damages must not be so unrelated to the injury and actual damages proven as to plainly manifest passion and prejudice rather than reason or justice." *Aken,* 2002–NMSC–021, ¶ 23, 132 N.M. 401, 49 P.3d 662, *quoted in Dollens v. Wells Fargo Bank, N.A.*, 2015-NMCA-096, ¶ 42, 356 P.3d 531, 545.

Plaintiff requests punitive damages in the amount of $300,000. Under the facts of this case, the Court believes that a punitive damages award equal to fifty percent of the compensatory damages is appropriate to punish Defendant. *Naranjo v. Paull,* 111 N.M. at 172, 803 P.2d at 261

(holding that punitive damages are an appropriate sanction for fraudulent misrepresentation); *See Eckhardt v. Charter Hospital of Albuquerque, Inc.,* 124 N.M. at 562, 953 P.2d at 735 ("To be liable for punitive damages, a wrongdoer must have some culpable mental state, and the wrongdoer's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level.").

Generally, punitive damages are appropriate for fraudulent conduct under New Mexico law. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 995 (10th Cir. 1999) (Under New Mexico law, "Punitive damages are an appropriate sanction for common-law fraud."), *citing Naranjo v. Paull,* 111 N.M. 165, 803 P.2d 254, 261–62 (App.1990).  Punitive damages must be reasonable. *Chavarria v. Fleetwood Retail Corp.*, 2006-NMSC-046, ¶ 36, 140 N.M. 478, 489, 143 P.3d 717, 728, *as revised* (Oct. 11, 2006). In assessing the reasonableness of punitive damages, the Court applies the following criteria: "(1) the reprehensibility of the defendant's conduct, or the enormity and nature of the wrong; (2) the relationship between the harm suffered and the punitive damages award; and (3) the difference between the punitive damages award and the civil and criminal penalties authorized or imposed in comparable cases". *Chavarria v. Fleetwood Retail Corp.*, 2006-NMSC-046, ¶ 36, 140 N.M. 478, 489, 143 P.3d 717, 728, *as revised* (Oct. 11, 2006)

As to the first factor, the Court considers "the type of harm inflicted; whether the conduct was repeated or isolated; and whether the harm was intentionally malicious, misleading, or deceitful, or merely accidental in nature" *Akins v. United Steelworkers Of Am., AFL-CIO, CLC, Local 187*, 2009-NMCA-051, ¶ 32, 146 N.M. 237, 247, 208 P.3d 457, 467, *aff'd sub nom. Akins v. United Steel Workers of Am., AFL-CIO, CLC, Local 187*, 2010-NMSC-031, ¶ 32, 148 N.M. 442, 237 P.3d 744.  Here, the evidence presented by Plaintiff as attached to her supplemental brief establish that Defendant's actions were malicious, willful, or fraudulent, and he appropriated settlement money for the death of Plaintiff's son to which he was not entitled.  The reprehensible

9

nature of Defendant's harm and aggravating factors weigh towards a punitive damages award of one-half of the compensatory damages.

Specifically, Plaintiff has shown that Defendant made fraudulent statements about the wrongful death case, lied to her about the existence of the settlement money, and lied when he said he never received the money.  **Doc. 18-3.**  In contrast, the exhibits show that Defendant in fact received the settlement money in a wire transfer to his bank account**.  Doc. 18.**  He not only appropriated the money, but lied to Plaintiff, telling her that the wrongful death case did not settle and asserting that he did not receive any settlement money.

Plaintiff has established that Defendant's actions were fraudulent, malicious, or willful. For example, Defendant signed the settlement disbursement letter and received the settlement money.  **Doc. 18-3 at 2.**  Defendant told Plaintiff that the wrongful death case defendants had good attorneys and "they were able to get out of the case."  *Id.*  Based on this representation, Plaintiff thought that she had lost the case.

On a trip from Colorado to Mexico, Plaintiff stopped at Defendant's home in Los Lunas, New Mexico and asked for the settlement papers.  He said he never received a copy of the settlement papers.  **Doc. 18-3 at 3.**  Plaintiff subsequently spoke to her attorney and learned that there had a been a settlement and her share was $214,126.28.  Plaintiff subsequently asked Defendant about het settlement and he denied knowledge of it and said he never got the money. The exhibits show that Defendant received the settlement check and deposited the amount in his bank account.  Defendant also withheld $4,000 from her from a settlement with different defendants.

Plaintiff also asserts that Defendant took advantage of her naivete and ignorance of American law in negotiating for one-half of her settlement proceeds for acting as power of attorney and receiving her settlement check.

"The test under the second guidepost in New Mexico is that [t]he amount of an award of punitive damages must not be so unrelated to the injury and actual damages proven as to plainly manifest passion and prejudice rather than reason or justice." *Chavarria v. Fleetwood Retail Corp.*, 2006-NMSC-046, ¶ 38, 140 N.M. 478, 490, 143 P.3d 717, 729, *as revised* (Oct. 11, 2006). "*Campbell* indicated that punitive damage awards reflecting a single-digit ratio between punitive and compensatory damages are most likely to comport with due process." *Id.*   Here, the amount of the punitive award is half of the actual losses suffered by Plaintiff.  Therefore, the Court finds that this factor weighs toward finding that a one-half punitive damages award is reasonable.

As to the third factor, this is well less than the treble damages authorized for similar conduct under the New Mexico Unfair Practices Act.

Based on these factors, the Court finds that a reasonable punitive damages award is one-half of compensatory damages, or $109,063.14.

### E.    Other Damages

Defendant has shown costs of $400 for the filing fee and $54.16 for service of process. **Doc. 18, Ex. 12, Ex. 13.**  28 U.S.C.A. § 1920 (court may tax as costs fees of clerk and marshal); *Ortega v. IBP, Inc.*, 883 F. Supp. 558, 561 (D. Kan. 1995) (widely accepted that cost includes service of process); *Griffith v. Mt. Carmel Med. Ctr.*, 157 F.R.D. 499, 507 (D. Kan. 1994) ("fees of clerk and marshal" under 19820 "is generally intended to make the costs of service of process taxable."); *Carleton v. Wal-Mart Stores, Inc.*, No. CIV 99-965 MV/DJS, 2001 WL 37125271, at *3 (D.N.M. Feb. 6, 2001) ("Several courts in this district have found that private process servers

11

fees are taxable, analogizing to the allowance of a marshal's fee for serving a subpoena or summons for a witness.").

Plaintiff did not assert the legal basis for prejudgment interest in their motion for default judgment or provide anything to support such an award. Therefore, the Court will decline to *sua sponte* analyze whether prejudgment interest is appropriate.

However, post-judgment interest from the entry of a district court's judgment is mandatory under 28 U.S.C. §1961, which provides that postjudgment interest "shall be allowed on any money judgment in a civil case recovered in a district court" with interest calculated from the date of the entry of the judgment, "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961(a). Further, post-judgment interest "shall be computed daily to the date of payment . . . and shall be compounded annually." § 1961(b). *See Boston Old Colony Ins. Co. et al v. Tiner Assoc., Inc., et al*., 288 F.3d 222, 223 (5th Cir. 2002) (postjudgment interest is calculated at the federal rate, while prejudgment interest is calculated under state law). Thus, Plaintiff is entitled to postjudgment interest on her damages.

## CONCLUSION

In sum, the Court finds and concludes that Plaintiff is entitled to default judgment and that Defendant owes Plaintiff (1) compensatory damages in the amount of $218,126.28; (2) punitive damages in the amount of $109,063.14; (3) post-judgment interest at the federal statutory rate; and (4) costs of $454.16. Plaintiff has not shown her entitlement to pre-judgment interest, attorney fees, and treble damages. Therefore, total judgment will be entered against Defendant and in favor of Plaintiff in the amount of $327,643.58.

      **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Default Judgment Against Defendant (**Doc. 10**) is hereby **GRANTED IN PART** for reasons described above;

      **IT IS FURTHER ORDERED** that Plaintiff's Motion for Court to Direct Clerk to Enter order of Default (**Doc. 11**) is **GRANTED** to the extent still pending**.** The clerk has already entered default prior to this opinion. **Doc. 12.**

      A separate judgment will issue.

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE